IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | § § § § § | |
| Plaintiff, | | |
| vs. | § § § | Civil Action No. 6:17-cv-00145 |
| **C.H. GUERNSEY & COMPANY,** | § § § | |
| Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Travelers Casualty and Surety Company of America ("**Travelers**") files its Original Complaint against Defendant C.H. Guernsey & Company ("**Defendant**"), and in support thereof respectfully states as follows:

### I.     PARTIES

1.     Travelers is a corporation formed under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut. Travelers is duly qualified and authorized to transact business within the State of Texas.

2.     Defendant is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business located in Oklahoma City, Oklahoma. Defendant is a citizen of the State of Oklahoma for purposes of 28 U.S.C. § 1332(a) and may be served with process through its registered agent, National Corporate Research, Ltd., at 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

3. This Court possesses original jurisdiction over Travelers's claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter in controversy is between citizens of different states.

4. Venue is proper in the United States District Court for the Western District of Texas, Waco Division, under 28 U.S.C. § 1391(b)(2) because the property that is the subject of the action is situated in this district.

## III. FACTUAL ALLEGATIONS

5. RMA Land Construction, Inc. ("**RMA**"), as principal, and Travelers, as surety, executed payment and performance bonds in favor of the U.S. Army Corps of Engineers ("**USACE**"), as owner, in connection with the Fort Hood Stadium Replacement construction project (the "**Project**").

6. In connection with the design and development of the Project, RMA and Defendant entered into a master design services subcontract agreement, dated August 3, 2010 (the "**Subcontract**"), wherein Defendant was to provide design services for the Project.

7. RMA subsequently began to experience financial problems. Travelers was called upon to facilitate the completion of the Project by supporting its principal, RMA, through and following the completion of the Project, including incurring costs to complete RMA's scope of work on the Project.

8. During the course of completion of the Project, Travelers encountered problems that were directly related to Defendant's design of certain portions of the Project, primarily with respect to areas within the lighting and drainage scopes of work.

### A. SOFTBALL COMPLEX LIGHTING DESIGN DEFICIENCIES

9. Upon information and belief, Defendant entered an agreement with Hubbell Lighting, Inc. ("**Hubbell**"), and Hubbell's distributor, Triple C Lighting and Controls ("**TCL**"), to develop the layout and design of the Project's softball complex (the "**SBC**"), including the design of the SBC's lighting system. According to Defendant, Hubbell based its design of the lighting system and photometric calculation on a CAD file provided by Defendant and originating with USACE. The CAD file allegedly indicated the that the softball field was to have a radius of 200 feet, rather than the correct radius of 275 feet identified in the text of USACE's request for proposal.

10. Ultimately, Defendant incorporated the incorrect layout into the issued-for-construction drawings and specifications. RMA's electrical subcontractor, Gerald Nunn Electric, LLC, installed Defendant's lighting design in accordance with the issued-for-construction drawings, unaware of the undersized dimensions of the softball field layout. Defendant failed to notify the construction team of the discrepancy in the dimensions of the field. In addition, Defendant's deficient design called for an insufficient number of lights per light pole and resulted in the construction of light poles in the outfield, which had to be removed and reinstalled.

11. As a direct result of Defendant's deficient design, Travelers has incurred costs totaling the amount of $302,022.00 to remove and replace light poles at the SBC, perform associated electrical work, and repair damage caused to other work during the repair process.

### B. DRAINAGE DESIGN DEFICIENCIES

12. Defendant's drainage design failed to provide sufficient drainage for the Project's stadium site and failed to address runoff from adjacent areas. The drainage design allowed water to run across the Project site, resulting in the repeated washout of soil hydro-seeding, among other

problems. Travelers was forced to incur $526,182.99 to install additional drainage structures, regrade numerous areas, repeatedly perform hydro-seeding, and install sod.

### C. STADIUM EMERGENCY EGRESS LIGHTING DEFICIENCY

13. Defendant's design for the egress lighting system at the Project's stadium failed to meet USACE's requirements. Specifically, emergency lights are required to stay illuminated for at least 1.5 hours, or until normal lighting levels are reestablished and maintained. Defendant's design provided no way to monitor the lighting level because of a delay in the illumination with the field lighting. In addition, the egress lighting system is required to operate in the event of a power failure, the opening of a breaker or fuse, or other acts including the accidental opening of a switch control. Defendant's design only monitored the power source for interruption. Further, Defendant's design called for the use of a switch to activate emergency lighting, which did not comply with USACE's requirements.

14. Defendant's egress lighting design did not address a full power failure to the stadium, which could have led to a public safety hazard if a power failure occurred while the stadium was occupied with a crowd of spectators and participants. As a result of Defendant's egress lighting design deficiency, Travelers incurred costs of $38,043.00 to add an emergency generator, automatic transfer switch, emergency lighting, piping for wiring and fuel, and related labor.

15. To date, Travelers has incurred total costs of at least $1,074,269.81—inclusive of the costs discussed in the preceding paragraphs—to correct problems and perform additional work arising from Defendant's deficient design.

### D. TRAVELERS'S SUBROGATION RIGHTS

16. There are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962). Where a surety contributes to the satisfaction of the principal's duty to an obligee, the surety is equitably subrogated to the rights of the obligee against the principal or other persons. *See* Restatement (Third) of Suretyship and Guaranty § 28 (1995). The right of subrogation exists when the surety is called upon to complete the contract. *Pearlman*, 371 U.S. at 414.

17. In *Pearlman*, the Court recognized that traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise, such as the surety had in that case. *Id.* at 137. This rule [is] widely applied in this country and generally known as the right of subrogation. *Id.* The Court, citing *Memphis & L.R.R. Co v. Dow*, 120 U.S. 287 (1887), emphasized that "the right of subrogation is not founded on contract. Rather it is a creature of equity, is enforced solely for the purpose of accomplishing substantial justice, and is independent of any contractual relations between the parties." *Id.* at 137.

18. Restatement (Third) of Suretyship and Guaranty § 28 (1996) provides the surety, to the extent of its performance under the bond, the rights of the obligee, as though the underlying obligation had not been satisfied, against any other persons whose conduct has made them liable to the obligee with respect to the default on the underlying obligation. Accordingly, subrogation allows the surety to pursue the obligee's contract and tort rights, and assert defenses against third parties related to or arising out of the bonded contract. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY §28 (1996). These include the obligee's substantial rights against design professionals for professional negligence attributable to improper certification of payments, wrongful release of retainage, negligent observation and acceptance of the work, and other claims constituting negligent performance or breaches of the obligee's contract with the design professional. *See Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum*, 392 F.2d 472 (8th Cir. 1968)

(allowing a surety, which provided financial assistance to its principal to complete a bonded project, to recover directly against the architect for negligent supervision of the construction).

19. Here, Travelers was called upon to facilitate RMA's completion of its work on the Project. During such completion, the above-described deficiencies with Defendant's design were discovered, and Travelers incurred significant costs to perform corrective and additional work arising directly from Defendant's deficient design. Accordingly, the doctrine of equitable subrogation allows Travelers to assert the rights of USACE and RMA—the bond obligee and principal, respectively—against Defendant, as Defendant's defaults made it liable to those parties for the deficient design of the Project.

E. **APPLICABLE PROVISIONS OF THE SUBCONTRACT**

20. The Subcontract between Defendant and RMA addressed Defendant's general liability, liability for errors, omissions, or deficiencies, and general indemnity. Applicable provisions of the Subcontract are as follows:

> **Section 9.1. General Liability**. Subject to all other terms and conditions of this Agreement, and to the fullest extent permitted by law, the A/E shall be liable to CONTRACTOR for all damages including without limitation, any government fines, penalties or corrective measures, attributable to the extent caused by any negligent acts of commission or omission by the A/E, its employees, agents and A/E's subcontractors, consultants, or suppliers resulting from
>
> (i) A/E's material breach of this Agreement
> (ii) The performance or non-performance of the Design Services pursuant to this Agreement
> (iii) The failure of the Design Services to comply with applicable laws or any deficiency in the Design Services or Design Documents provided hereunder.
>
> **Section 9.2. Errors, Omissions or Deficiencies**. A/E shall be responsible for its actions and Design Services, for the professional quality, care, diligence, skill, technical accuracy, and the cooperation and coordination of all designs, drawings, specifications and other design services and work product performed pursuant to this Agreement. A/E shall at its own cost and without additional compensation, and in a very prompt and timely manner, correct any errors, omissions or defects or deficiencies in the Basic Design Services, Work or Additional Services. A/E also

shall be responsible for any costs of redesign or construction incurred as a result of any negligent errors, omissions or deficiencies in the Design Services. In the event CONTRACTOR is required to correct A/E's errors, omissions, or deficiencies in the Design Services, any redesign costs or additional construction costs incurred by CONTRACTOR as a result shall be paid by A/E.

**Section 9.3. General Indemnity**. A/E will be responsible for, and shall indemnify, defend and hold harmless CONTRACTOR and its officers, directors, principals, and employees, from and against any claims, liability, damages, costs, losses, and expenses, to the extent caused by A/E's negligent acts. errors or omissions of A/E or those any of its subconsultants and/or subcontractors in connection with this Agreement. The indemnification obligations discussed herein shall not be limited including with respect to amount or type of damages, compensation or benefits required to be paid under workers' compensation acts, disability benefit acts or other employee benefit acts.

## IV.   CLAIMS FOR RELIEF

### A.   BREACH OF CONTRACT

21.   Travelers hereby restates the averments contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

22.   RMA and Defendant executed the Subcontract, which is a valid and enforceable written contract. The Subcontract provided, without limitation, that: (1) Defendant is liable to RMA for all damages caused by its negligent acts of commission or omission; (2) Defendant is responsible for its actions and design services; and (3) Defendant shall indemnify, defend, and hold harmless RMA from liability for damages, costs, and losses arising from Defendant's negligent acts, errors, or omissions.

23.   RMA fully performed its contractual obligations by paying to Defendant all amounts due under the Subcontract.

24.   Defendant breached the Subcontract by failing to provide reimbursement for the costs incurred to perform corrective work necessitated by the design deficiencies identified above.

25.   Defendant's breach has caused injury to Travelers, which resulted in actual damages in the amount of at least $1,074,269.81.

### B. NEGLIGENCE

26. Travelers hereby restates the averments contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

27. Defendant owed RMA a duty to use the skill and care in the performance of Defendant's duties commensurate with the requirements of Defendant's profession, and is liable for a failure to exercise reasonable care and skill commensurate with those requirements.

28. Defendant was negligent in providing design services for the Project's softball complex lighting, drainage, and stadium emergency egress lighting, and further failed to demonstrate the thoughtfulness and attention to detail expected from a reputable design professional.

29. As a result of Defendant's negligence described in Paragraphs 9-14, Travelers has incurred costs of at least $1,074,269.81 to perform corrective work at the Project.

30. The breaches of duty described above were the proximate cause of the damage suffered by Travelers.

31. In support of this suit, the Certificate of Merit and Affidavit of E.P. Hamilton III, Ph.D., P.E. is attached as **EXHIBIT A** and is fully incorporated by reference, and the Certificate of Merit and Affidavit of Larry L. Tait, P.E. is attached as **EXHIBIT B** and is fully incorporated by reference.

### V. CONDITIONS PRECEDENT

32. All conditions precedent to recovery by Travelers from Defendant have occurred or have been performed.

### VI. ATTORNEY FEES

33. Travelers hereby restates the averments contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

34. The above-referenced acts forced Travelers to retain legal counsel to pursue recovery for damages caused by Defendant's acts and/or omissions. Accordingly, Travelers seeks reimbursement for its reasonable attorney fees and costs.

35. Travelers is entitled to recovery of its attorney fees under Section 38.001 of the Texas Civil Practice & Remedies Code.

## VII.   INTEREST

36. Travelers hereby restates the averments contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

37. Travelers is entitled to recover prejudgment interest under its causes of action against Defendant at the highest rate allowed by law. Further, if Travelers recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of judgment until such judgment is satisfied.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Travelers prays for the following relief:

(a) For the issuance of process requiring Defendant to answer Travelers's Original Complaint;

(b) For the entry of judgment against Defendant in the amount of $1,074,269.81, or a greater amount to be proved at trial;

(c) For the entry of a judgment against Defendant for Travelers's reasonable attorney fees and expenses;

(d) For the entry of judgment against Defendant for prejudgment interest to which Travelers is entitled, at the highest rate allowed by law, and all post-judgment interest to which Travelers is entitled, at the highest rate allowed by law, from the date of judgment until such judgment is satisfied;

(e) For the entry of judgment against Defendant for all costs of court; and

(f) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

DATED: June 2, 2017.

Respectfully Submitted,

*/s/ Mike F. Pipkin*
MIKE F. PIPKIN
Attorney-in-Charge
Texas State Bar No. 16027020

**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone: 214.865.7012
Facsimile: 214.865.6140
Email: mpipkin@weinrad.com

**ATTORNEY FOR PLAINTIFF
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA**